UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY F/K/A BANKERS TRUST COMPANY OF CALIFORNIA, NA AS TRUSTEE | ) ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| D. SCOTT HEINEMAN, TRUSTEE OF THE FARKAS BERMANT FAMILY TRUST AND INDIVIDUALLY, | ) ) ) ) | 05 - 30069 - KPN |
| And | ) ) | |
| KURT F. JOHNSON, TRUSTEE OF THE FARKAS BERMANT FAMILY TRUST AND INDIVIDUALLY, | ) ) ) ) | |
| And | ) ) | |
| JULIE R. BERMANT | ) ) | |
| And | ) ) | |
| DAVID F. FARKAS | ) ) | |
| Defendants | ) ) | |

RECEIPT # 305884
AMOUNT $ 250.00
SUMMONS ISS. ✓
LOCAL RULE 4.1
WAIVER OF SERV.
MCF ISSUED
AO 120 OR 121 ✓
BY DPTY CLK. MGb
DATE 3/17/05

**COMPLAINT**

PARTIES

1) Plaintiff, Deutsche Bank National Trust Company f/k/a/ Bankers Trust Company of California, NA as Trustee (hereinafter "National Trust") is a corporation with a principal place of Business in California.

2) Defendant D. Scott Heineman (hereinafter "Heineman"), Trustee of the Farkas

Bermant Family Trust holds title to the property commonly known as and numbered 160

A High Street, Amherst, Massachusetts (hereinafter "the Property") and upon information

and belief holds an interest in the Property individually.

3) Defendant Kurt F. Johnson (hereinafter "Johnson"), Trustee of the Farkas Bermant

Family Trust holds title to the Property and upon information and belief holds an interest

in the Property individually.

4) Defendant Julie R. Bermant (hereinafter "Bermant") formerly held title to the Property

and upon information and belief holds an interest in the Property.

5) Defendant David F. Farkas (hereinafter "Farkas") formerly held title to the Property

and upon information and belief holds an interest in the Property.

## JURISDICTION

6) Jurisdiction rests with the United States District Court of Massachusetts since diversity

exists between the Plaintiff and the Defendants and the amount in controversy exceeds

seventy-five thousand and 00/100 dollars ($75,000.00) (Title 28 U.S.C. Sec. 1332).

7) Jurisdiction also rests with the United States District Court of Massachusetts under

Title 18 U.S.C. Sec. 1965.

## FACTS

8) On or about September 12, 2004, the Defendants Bermant and Farkas executed a

Promissory Note and Mortgage in the amount of one hundred eighty-three thousand and

00/100 dollars ($183,000.00). *See* Exhibits A and B (true and correct copies of the

Promissory Note and Mortgage are attached hereto).

9) The aforesaid Mortgage was recorded at the Hampshire County Registry of Deeds at Book 7469, Page 243 and is now held by the Plaintiff by assignment.

10) Bermant and Farkas have failed to make the payment due under the aforesaid Note and Mortgage due May 1, 2004 and all subsequent payments and are therefore in default under the aforesaid Note and Mortgage.

11) On or about June 19, 2004 the Defendants Bermant and Farkas executed a deed conveying the Property to Heineman and Johnson as trustees for the consideration of one dollar ($1.00) and said deed was recorded at the Hampshire County Registry of Deeds at Book 7862, Page 162 *See* Exhibit C (a true and correct copy of this document is attached hereto).

12) The conveyance alleged in Paragraph 11. was done without the permission of National Trust or any of its predecessors in interest and is in violation of the aforesaid Note and Mortgage.

13) On or about July 26, 2004, Heineman executed an alleged "Specific Power of Attorney" (hereinafter "Power") purporting to allow Heineman to, among other things, execute a discharge of the aforesaid Mortgage which was recorded at the Hampshire County Registry of Deeds at Book 7971, Page 122 *See* Exhibit D (a true and correct copy of this document is attached hereto).

14) The Defendants Bermant and Farkas are aware of Heineman's execution and recording of the aforesaid Power.

15) The execution of the Power alleged in paragraph 13. was done without the permission of National Trust or any of its predecessors in interest and was done to defraud National trust and its predecessors in interest.

16) On or about July 22, 2004 Heineman executed a Discharge which purported to discharge the aforesaid Note and Mortgage and said Discharge was recorded at the Hampshire County Registry of Deeds at Book 7971, Page 121 *See* Exhibit E (a true and correct copy of the Discharge is attached hereto).

17) The Defendants Bermant and Farkas are aware Heineman's execution and recording of the aforesaid Discharge.

18) The execution of the Discharge alleged in paragraph 16. was done without the permission of National Trust or any of its predecessors in interest and was done to defraud National trust and its predecessors in interest.

19) Upon information and belief, the actions by the Defendants in executing fraudulent documents and placing them on record at the Hampshire County registry are part of a nationwide scheme to defraud creditors by filing false, misleading and unlawful documents *See* Exhibits F and G (a true and correct copy of rulings from the Hampshire County Superior Court and from the U.S. District Court California Northern District respectively are attached hereto).

## COUNT ONE

### FRAUD

20) National Trust realleges Paragraphs One through Nineteen as though fully set forth in this Count.

21) The actions of the Defendants constitute an attempt to defraud the Plaintiff of sums due and owing under the aforesaid Note and Mortgage.

22) The actions of the Defendants constitute an attempt by the Defendants to defraud the Plaintiff of its secured position concerning the Property.

**WHEREFORE**, the Plaintiff prays that this Honorable Court:

    a.  Declare the aforesaid Power of Attorney null and void

    b.  Declare the aforesaid Discharge null and void

    c.  Award the Plaintiff Compensatory Damages including attorney's fees and costs

    d.  Such other and further relief that the Court deems just

**COUNT TWO**

**VIOLATION OF U. S. CODE TITLE 18 CHAPTER 96**

23) The Plaintiff realleges Paragraphs One through nineteen as though fully set forth in this Count.

24) The actions alleged herein by the Defendants constitute a violation of U. S. Code Title 18, Chapter 96, et seq.

25) Venue lies with this Court under U. S. Code Title 18, Chapter 96 Section 1965.

26) U. S. Code Title 18, Chapter 96 Section 1964 provides for the allowance of triple damages and attorney's fees.

**WHEREFORE**, the Plaintiff prays that this Honorable Court:

    a.  Award the Plaintiff Compensatory Damages including triple damages, attorney's fees and costs

    b.  Such other and further relief that the Court deems just

DEUTSCHE BANK NATIONAL TRUST
COMPANY F/K/A BANKERS TRUST
COMPANY OF CALIFORNIA, NA AS
TRUSTEE by its counsel

John A. Doonan, Esq.
Doonan, Graves, & Longoria, LLC
 100 Cummings Ctr.
 Suite 213C
 Beverly, MA  01915

EXHIBIT

A



**3 YEAR RATE LOCK**

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| September 12, 2003 | AMHERST | MASSACHUSETTS |
|---|---|---|
| [Date] | [City] | [State] |

**160 A HIGH STREET** , AMHERST, MASSACHUSETTS 01002
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **183,000.00**       (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

### NEW CENTURY MORTGAGE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       **6.4000**       %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on       **November 1, 2003**       I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2033**       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 VON KARMAN, SUITE 1000 IRVINE, CA 92612**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **1,144.68**       . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN** *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP®-838N (0005)       Form 3520 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4       Initials:

0001040272

0320633175NTE S1   0001040272

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **October**    **2006**   , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and One-Quarter** percentage points ( **5.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.9000** % or less than **6.4000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.4000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**0001040272**

Form 3520 1/01
Initials:

 

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**0001040272**

Form 3520

Initials:



**Transfer of the Property or a Beneficial Interest in Borrower**. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JULIE R BERMANT                    -Borrower

_____ (Seal)
DAVID F FARKAS                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*[Sign Original Only]*

0001040272

-838N (0005)

Form 3520 1/01



Loan Number  0001040272

**PREPAYMENT RIDER**
ADJUSTABLE RATE LOAN - MASSACHUSETTS

This Prepayment Rider is made this **12th**    day of **September, 2003**
and is incorporated into and shall be deemed to amend and supplement the Promissory
Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date given by the undersigned (the "Borrower") to secure
repayment of Borrower's Note to
**NEW CENTURY MORTGAGE CORPORATION**

(the"Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the
provisions of the Note and/or Security Instrument, the provisions of this Rider shall
prevail over and shall supersede any such inconsistent provisions of the Note and/or
Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the
Borrower and Lender further covenant and agree as follows:

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A
payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as Prepayment if I have not made all the monthly payment due under this
Note.

Except as provided below, I may make a Full Prepayment or Partial
Prepayments without paying any Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However,
the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount before applying my Prepayment to reduce the Principal amount
of this Note. If I make a partial Prepayment, there will be no changes in the due
dates of my monthly payments unless the Note Holder agrees in writing to those
changes. My partial Prepayment may reduce the amount of my monthly payments
after the first Change Date following my partial Prepayment. However, any
reduction due to my partial Prepayment may be offset by an interest rate increase.

However, if within the first     **3** year(s) after the execution of the Security
Instrument I make a Full Prepayment, I will pay a prepayment charge subject to the
following limitations: (a) if I make a Full Prepayment, the prepayment charge will
not exceed the lesser of three (3) months' interest or the remaining balance of the
first year's interest; and (b) if I make a Full Prepayment for the purpose of
refinancing my loan with another financial institution, an additional payment not in
excess of three (3) months' interest will be required. In no event will such charge be
made if it violates state or federal law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Prepayment Rider.

_____        _____
**JULIE R BERMANT**              **DAVID F FARKAS**

_____        _____

NCMC
ARM Prepay Rider - Massachusetts
RE-249 SCB 9664  3/21/02



Return To:
**NEW CENTURY MORTGAGE CORPORATION**

**18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612**

Prepared By:
**NEW CENTURY MORTGAGE CORPORATION**



2003 00040931
Bk: 7469Pg: 243 Page: 1 of 24
Recorded: 09/18/2003 10:49 AM

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 12, 2003**            ,
together with all Riders to this document.
(B) **"Borrower"** is
**JULIE R BERMANT    AND DAVID F FARKAS**

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is **NEW CENTURY MORTGAGE CORPORATION**

Lender is a **CORPORATION**
organized and existing under the laws of    **CALIFORNIA**

                                                                    **0001040272**

**MASSACHUSETTS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**         **Form 3022  1/01**

-6(MA) (0005)
Page 1 of 15        Initials:
    VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612**
Lender is the mortgagee under this Security Instrument.
(D) **"Note"** means the promissory note signed by Borrower and dated **September 12, 2003**
The Note states that Borrower owes Lender **One Hundred Eighty-Three Thousand and
No/100 -------------------------------------------------** Dollars
(U.S. $ **183,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2033**
(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

**Arm Rider Addendum
Prepayment Rider**

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) **"Escrow Items"** means those items that are described in Section 3.
(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

**0001040272**

Initials:

-6(MA) (0005)                    Page 2 of 15                    **Form 3022  1/01**

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **COUNTY**                                                                          [Type of Recording Jurisdiction]
of **HAMPSHIRE**                                         [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

Parcel ID Number:  **MAP 11D BLK 1 LOT 130**                          which currently has the address of
**160 A HIGH STREET**                                                              [Street]
**AMHERST**                                               [City] , Massachusetts **01002**      [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

        **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0001040272

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of

Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied

**0001040272**

Initials:

-6(MA) (0005)     Page 6 of 15     Form 3022  1/01

to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0001040272

Initials: ____

-6(MA) (0005)                    Page 7 of 15                    Form 3022  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the**

0001040272

Initials

Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0001040272

Initials: _____

Form 3022  1/01

-6(MA) (0005)                          Page 9 of 15

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations

001040272

Initials

-6(MA) (0005)                    Page 10 of 16                    Form 3022  1/01

contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0001040272

Initials:

-6(MA) (0005)     Page 12 of 15     Form 3022  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials  0001040272    Form 3022  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____
WITNESS AS TO BOTH

_____ (Seal)
JULIE R BERMANT                    -Borrower

_____ (Seal)
DAVID F FARKAS                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

0001040272

-6(MA) (0005)                Page 14 of 15                Form 3022  1/01

**COMMONWEALTH OF MASSACHUSETTS,**    HAMPSHIRE    **County ss:**

On this  12TH  day of  SEPTEMBER, 2003  , before me personally appeared

DAVID F. FARKAS AND JULIE R. BERMANT

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:

_____
Notary Public

Patrick A. Corliss
Notary Public
My Commission Expires
Jan. 29, 2010

-6(MA) (0005)        Page 15 of 15        Initials: _____    001040272    Form 3022  1/01

APPENDIX A

Unit 160A of High Street Condominiums, having a mailing address of 160A High Street,
Amherst, Hampshire County, Massachusetts, as described in the Master Deed of High Street
Condominiums, dated December 29, 1989, and recorded in the Hampshire County Registry of
Deeds at Book 3503, Page 1, as amended by an instrument dated August 18, 1994, and recorded
with said Registry at Book 4538, Page 157.

The said High Street Condominiums is comprised of the land, with the buildings, improvements,
and structures thereon and with the easements, rights, and appurtenances belonging thereto,
located on the Westerly side of High Street, Amherst, Hampshire County, Massachusetts, shown
as Parcel 1 on a plan of land entitled "Amherst, Mass. Hampshire County, Plan of Land for Scott
J. Nielson and Elinor R. Levine", dated July 15, 1988, and recorded in the Hampshire County
Registry of Deeds at Plan Book 155, Page 90.

Said Unit 160A is conveyed together with a 50% undivided interest in the land, common areas,
and common facilities appurtenant thereto as described in said Master Deed, as amended.

Said Unit 160A is subject to the provisions, easements, and restrictions contained in said Master
Deed.

Said Unit 160A is subject to the rules and regulations promulgated by the Trustees of the High
Street Condominiums Trust and subject to the provisions of the by-laws, as set forth in a
Declaration of Trust, dated December 29, 1989, and recorded with said Registry at Book 3503,
Page 24.

BEING THE SAME premises conveyed in a deed from Bruce A. Marbin and Jana R. Zvibleman
to David F. Farkas and Julie R. Bermant dated July 18, 1994 and recorded in the Hampshire
County Registry of Deeds at Book 4538, Page 168.

The Borrowers hereby subordinate any and all Declarations of Homestead regarding this
premises to this mortgage to New Century Mortgage Corp..

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**
**3 YEAR RATE LOCK**

THIS ADJUSTABLE RATE RIDER is made this **12th** day of **September  2003** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**NEW CENTURY MORTGAGE CORPORATION**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**160 A HIGH STREET, AMHERST, MA  01002**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **6.4000** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of **October  2006** , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**0001040272**

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -Single Family-Fannie Mae Uniform Instrument**

-838R (0006)         Form 3138 1/01
Page 1 of 4             Initials:
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and One-Quarter** percentage points ( **5.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.9000** % or less than **6.4000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage points ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.4000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

0001040272

Initials

838R (0006)          Page 2 of 4          Form 3138 1/01

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

   To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

   If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

0001040272

Initials:

-838R (0006)                    Page 3 of 4                    Form 3138 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JULIE R BERNANT                     -Borrower

_____ (Seal)
DAVID F FARKAS                      -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

0001040272

-838R (0006)            Page 4 of 4            Form 3138 1/01

Loan Number **0001040272**

## ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider is made this **12th** day of **September 2003**, and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**NEW CENTURY MORTGAGE CORPORATION**

(the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**160 A HIGH STREET    , AMHERST, MASSACHUSETTS 01002**

(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4. (D) LIMITS ON INTEREST RATE CHANGES**
**The interest rate I am required to pay at the first change date will not be greater than 7.9000 % or less than 6.4000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and One-Half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.4000 % or less than 6.4000 %.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

_____          _____
JULIE R BERMANT                        DAVID F FARKAS

_____          _____

New Century Mortgage                                    ridmin.ltd JP 051702
RE 102 (082296)

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **12th** day of **September 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

### NEW CENTURY MORTGAGE CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
### 160 A HIGH STREET , AMHERST, MASSACHUSETTS 01002

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
### HIGH STREET CONDOMINIUM

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the

**0001040272**

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**-8R** (0008)          Form 3140 1/01
Page 1 of 3          Initials:
VMP MORTGAGE FORMS - (800)521-7291

provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

0001040272

-8R (0008)                           Page 2 of 3          Initials                    Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
JULIE R BERMANT                    -Borrower

_____ (Seal)
DAVID F FARKAS                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

0001040272

-8R (0008)                Page 3 of 3                Form 3140 1/01

ATTEST: HAMPSHIRE, _____, REGISTER
                   MARIANNE L. DONOHUE



EXH BIT

C

RECORDING REQUESTED BY

DAVID F. FARKAS, GRANTOR
JULIE R. BERMANT, GRANTOR

AND WHEN RECORDED MAIL THIS DEED AND TAX
STATEMENTS TO:

BERMANT FAMILY TRUST
c/o P.O. BOX 23
AMHERST, MA 01004

Bk: 7862Pg: 126 Page: 1 of 2
Recorded: 06/21/2004 12:09 PM

2004 00017882

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

160 A HIGH ST   AMHERST MA 01002

# QUITCLAIM DEED

DOCUMENTARY TRANSFER TAX $ _____

X not pursuant to sale, OR

___computed on full value of property conveyed, OR

___computed on full value less liens and encumbrances
remaining at time of sale.

Signature or Declarant or Agent Determining Tax          Firm Name

DAVID F. FARKAS and JULIE R. BERMANT, the undersigned grantors, for ~~a valuable consideration~~, receipt of which
is hereby acknowledged, do now hereby remise, release and forever quitclaim to D. SCOTT HEINEMAN AND KURT
F. JOHNSON, TRUSTEES of the FARKAS BERMANT FAMILY TRUST, the following real property in the City of
AMHERST, County of HAMPSHIRE, State of MASSACHUSETTS;

One dollar ($1.00)

ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE CITY OF
AMHERST AND COUNTY OF HAMPSHIRE AND BEING KNOWN AND SHOWN AS UNIT 160A
OF HIGH STREET CONDOMINIUMS, HAVING A MAILING ADDRESS OF 160A HIGH STREET,
AMHERST, HAMPSHIRE COUNTY, MASSACHUSETTS, AS DESCRIBED IN THE MASTER DEED
OF HIGH STREET CONDOMINIUMS, DATED DECEMBER 29, 1989, AND RECORDED IN THE
HAMPSHIRE COUNTY REGISTRY OF DEEDS AT BOOK 3503, PAGE 1, AS AMENDED BY AN
INSTRUMENT DATED AUGUST 18, 1994, AND RECORDED WITH SAID REGISTRY AT BOOK
4538, PAGE 157. THE SAID HIGH STREET CONDOMINIUMS IS COMPRISED OF THE LAND,
WITH THE BUILDINGS, IMPROVEMENTS AND STRUCTURES THEREON AND WITH THE
EASEMENTS, RIGHTS, AND APPURTENANCES BELONGING THERETO, LOCATED ON THE
WESTERLY SIDE OF HIGH STREET, AMHERST, HAMPSHIRE COUNTY, MASSACHUSETTS,
SHOWN AS PARCEL 1 ON A PLAN OF LAND ENTITLED " AMHERST, MASS. HAMPSHIRE
COUNTY, PLAN OF LAND FOR SCOTT J. NIELSON AND ELINOR R. LEVINE", DATED JULY 15,
1988, AND RECORDED IN THE HAMPSHIRE COUNTY REGISTRY OF DEEDS AT PLAN BOOK
155, PAGE 90.  SAID UNIT 160A IS CONVEYED TOGETHER WITH AN 50% UNDIVIDED
INTEREST IN THE LAND, COMMON AREAS, AND COMMON FACILITIES APPURTENANT
THERETO AS DESCRIBED IN SAID MASTER DEED, AS AMENDED.  SAID UNIT 160A IS
SUBJECT TO THE RULES AND REGULATIONS PROMULGATED BY THE TRUSTEES OF THE
HIGH STREET CONDOMINIUMS TRUST AND SUBJECT TO THE PROVISIONS OF THE BY-
LAWS, AS SET FORTH IN A DECLARATION OF TRUST, DATED DECEMBER 29, 1989, AND
RECORDED WITH SAID REGISTRY AT BOOK 3503, PAGE 24.  BEING THE SAME PREMISES
CONVEYED IN A DEED FROM BRUCE A. MARBIN AND JANA R. ZVIBLEMAN TO DAVID F.
FARKAS AND JULIE R. BERMANT DATED JULY 18, 1994 AND RECORDED IN THE
HAMPSHIRE COUNTY REGISTRY OF DEEDS AT BOOK 4538, PAGE 168.

Assessor's Parcel Number: MAP 11D, BLK1, LOT 130

Executed on the 19 day, of the June month, in the year of 2004, at Amherst MA
                                                                    (city of execution)

_____              _____
DAVID F. FARKAS, GRANTOR                      JULIE R. BERMANT, GRANTOR

RICHARD F. MANNING
NOTARY PUBLIC, MASSACHUSETTS
MY COMMISSION EXPIRES NOVEMBER 27, 2009

STATE OF MASSACHUSETTS )

COUNTY OF HAMPSHIRE       )   ss.          **ACKNOWLEDGEMENT**
                          )

On _18 June_____, 2004, before me, _Richard F. Manning_ a Notary Public of HAMPSHIRE County
MASSACHUSETTS, personally appeared, _David F. Favreau and Julie A. Brosman +_____, personally
known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed
to the within instrument and acknowledged to me the he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

WITNESS my hand and notarial seal, this _19_ day of _June_____, 2004

My commission expires: _11 November 2009_

_Richard F. Manning_
Notary Public

RICHARD F. MANNING
NOTARY PUBLIC, MASSACHUSETTS
MY COMMISSION EXPIRES NOVEMBER 27, 2009

ATTEST: HAMPSHIRE, _Marianne L. Donohue_ , REGISTER
             MARIANNE L. DONOHUE

## SPECIFIC POWER OF ATTORNEY

The Undersigned, HOMEQ SERVICING CORPORATION, hereinafter "HOMEQ," residing P.O. BOX 13716, SACRAMENTO, CA. 95853-3716, hereby appoints D. Scott Heineman of 32108 Alvarado Blvd. #381, Union City, CA 94587 as HOMEQ'S Attorney-in-Fact, hereinafter "Agent."

If Agent is unable to serve for any reason, HOMEQ designates Kurt F. Johnson, of 32108 Alvarado Blvd. #381, Union City, CA 94587 as the Undersigned's successor Agent.

This Specific Power of Attorney is a self-executing agreement with HOMEQ'S signature affixed in accordance with UCC 1-401(b)(ii). Authority is to be assumed upon proof of proper notice and HOMEQ'S non-response default. Such action is to be construed as an endorsement of intent.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to:

1.  To prepare and record all necessary documents for proper reconveyance to the current trustors, JULIE R. BERMANT AND DAVID F. FARKAS, which reconveyance may include, but is not limited to: CERTIFICATE OF DISCHARGE, FULL RECONVEYANCE, SUBSTITUTION OF TRUSTEE, ASSIGNMENT OF NOTE AND/OR DEED, for that certain property recorded on September 18, 2003, in Unit 160A of High Street Condominiums, having a mailing address of 160A High Street, Amherst, Hampshire County, Massachusetts, as described in the Master Deed of High Street Condominiums, dated December 29, 1989, and recorded in the Hampshire County Registry of Deeds at Book 3503, Page 1, as amended by an instrument dated August 18, 1994, and recorded with said registry at Book 4538, Page 157.

2.  To prepare and record any and all necessary documents with the Secretary of State and County Recorder in HAMPSHIRE County specifically related to that certain said property recorded on September 18, 2003, in accordance with the terms of the contract including, but not limited to: NOTICE OF DEFAULT, DEFAULT JUDGMENT, SUBSTITUTION OF TRUSTEE, FULL RECONVEYANCE, POSSESSORY LIEN, MECHANIC'S LIEN, ARTISAN LIEN, SUBORDINATION AGREEMENT, RECISION OF DEFAULT.

3.  To prepare and record any and all necessary documents to amend, append, correct, or repair any and all derogatory credit reports made against TRUSTOR/RESPONDENT, on behalf of HOMEQ, which includes, but not be limited to: all credit reporting agencies, all credit service bureau's, and/or all credit reporting organizations, either public or private.

Agent shall not be liable for any loss resulting from a judgment error made in good faith. However, Agent shall be liable for willful misconduct, and likewise for failure to act in good faith while acting under authority of this Specific Power of Attorney.

HOMEQ authorizes Agent to indemnify and hold harmless any third party who accepts and acts under this document.

Agent is entitled to reasonable compensation for any and all services provided while acting in authorized capacity as agent of HOMEQ. Agent is entitled to reimbursement of all reasonable expenses incurred in connection with this Power of Attorney.

Agent shall provide an accounting for all funds handled and all acts performed while acting in authorized capacity as agent of HOMEQ if HOMEQ, or any authorized personal representative or fiduciary of HOMEQ, so requests.

This Specific Power of Attorney is effective July 22, 2004, and is not affected by HOMEQ'S disability or lack of mental competence, except as may otherwise be provided by applicable statute. This Specific Power of Attorney shall continue in effect for sixty (60) days from effective date, i.e. until September 22, 2004. This Specific Power of Attorney may be voided by HOMEQ, or Agent, through the proper filing of reconveyance documents at the Office of the County Recorder on or before the active date. An additional sixty (60) days is granted to Agent to cure any matters that may arise out of any action taken under this Specific Power of Attorney. The number of extensions of "an additional sixty (60) days" needed to settle any and all matters arising thereinafter is not set and is at the sole discretion of Agent.

*(apply wet-ink signature next to 'Company' name below, or signature now affixed will serve as proper endorsement)*

HOMEQ SERVICING CORPORATION
[Signature affixed in accordance with UCC §§ 1-201(39), 3-401(b)(ii)]

_____ / Attorney-in-Fact/ Agent          _____ Witness

STATE OF CALIFORNIA          )
                             ) ss.          **ACKNOWLEDGEMENT**
COUNTY OF ALAMEDA            )

On July 26th, 2004, before me, Jennifer C Holtzer _____ a Notary Public of Alameda County California, personally appeared, D Scott Heineman _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me the He executed the same in His authorized capacity, and that by His signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and notarial seal, this 26th day of July, 2004

My commission expires: 4/20/08

_____
Notary Public

JENNIFER C. HOLTZER
Commission # 1484690
Notary Public - California
Alameda County
My Comm. Expires Apr 20, 2008

PRIVATE INTERNATIONAL ADMINISTRATIVE REMEDY DEMAND NUMBER HSC-070104-FB
Page 12 of 12

ATTEST: HAMPSHIRE, _____ REGISTER
MARIANNE L. DONOHUE

EXHIBIT

E

RECORDING REQUESTED BY

The Undersigned

AND WHEN RECORDED MAIL THIS NOTICE TO:

D. SCOTT HEINEMAN, TRUSTEE
c/o 32108 Alvarado Blvd., #381
UNION CITY, CA 94587

2004 00028755

Bk: 7971Pg: 121 Page: 1 of 2
Recorded: 08/31/2004 10:29 AM

SPACE ABOVE THIS LINE FOR RECORDER'S USE

A.P.N./ P.I.N.: MAP 11D, BLK 1, LOT 130

# DISCHARGE OF MORTGAGE

JULIE R. BERMANT AND DAVID F FARKAS, Borrowers, with an address of 160A HIGH STREET, AMHERST, MA 01004, the sole owners and holders of a mortgage dated September 12, 2003, in the amount of $183,000.00, and executed by NEW CENTURY MORTGAGE CORPORATION, lender, with an address of 18400 VON KARMAN, SUITE 1000, IRVINE, CA 92612 which mortgage was recorded by NEW CENTURY MORTGAGE CORPORATION, 18400 VON KARMAN, SUITE 1000, IRVINE, CA 92612 on September 18, 2003, does hereby:

1. Certify that the above mortgage and the debt secured by such mortgage are fully paid, satisfied and discharged, and that the mortgage is fully and forever released from the property described therein;

2. Release to the person or persons legally entitled thereto all right, title and interest that the undersigned may have acquired in and to the property by reason of such mortgage; and

3. Authorize and direct the Register of Deeds of said county to discharge and cancel the mortgage of record recorded as Document Number 2003-00040831.

IN WITNESS WHEREOF, this Discharge of Mortgage is executed under seal on July 22, 2004.

Executed in the presence of:

HOMEQ SERVICING CORPORATION
HOMEQ SERVICING CORPORATION- D. SCOTT HEINEMAN
BENEFICIARY-Attorney-in-Fact (SEE ATTACHMENT)
Signature fixed in accordance with UCC §§ 1-201(39), 3-401(b)(ii)

STATE OF CALIFORNIA    )
                       ) SS.
COUNTY OF ALAMEDA      )

On July 26th , 2004, before me, JENNIFER C HOLTZER a Notary Public of Alameda County California, personally appeared, D SCOTT Heineman , personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me the He executed the same in His authorized capacity, and that by His signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and notarial seal, this 26th day of July , 2004.

My commission expires: 4/20/2008

Notary Public

JENNIFER C. HOLTZER
Commission # 1484690
Notary Public - California
Alameda County
My Comm. Expires Apr 20, 2008

EXHIBIT
F

A TRUE COPY
ATTEST

*[signature]*

HAMPSHIRE, ss.
CLERK MAGISTRATE

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT

04 258

NovaStar Mortgage, Inc.,
    Plaintiff,

v.

Elizabeth F. Riley,
Scott Heineman and
Kurt F. Johnson, Trustees of
the Riley Family Trust
and The Dorean Group,
    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.



2004 00034822
Bk: 8069Pg: 208 Page: 1 of 5
Recorded: 11/18/2004 03:17 PM

## MEMORANDUM OF LIS PENDENS

NOTICE is hereby given, pursuant to M.G.L. ch. 184, §15, that a Complaint in the above-entitled action was filed in the Hampshire County Superior Court in Northhampton, Massachusetts on November 12, 2004. Said Complaint concerns and affects title to a parcel of land located at 539 Market Hill Road, Amherst, Massachusetts, within the County of Hampshire, in the Commonwealth of Massachusetts.

The parcel is recorded in the Hampshire County Registry of Deeds on document number 992219686 in book 6700, page 281. *See Exhibit A* attached hereto for further title reference.

Having examined the Complaint in this matter, I hereby determine that the above-captioned action constitutes a claim of a right to title in real property or the use and occupation thereof or the building thereon, and so determine and certify under the provisions of M.G.L. ch. 184, §15, that there is a clear danger that the defendants, if notified in advance of the endorsement of this Memorandum of Lis Pendens, will convey, encumber, damage, or destroy the property or the improvements thereon.

DATED: 11/18/04

By the Court:

*[signature]*

Justice

BK 0 7 0 9 8 PG 2 4 1

Doc: 992219686 OR /6700/0293    07/02/2002 11:36

# Exhibit "A"
## Legal Description

The land in said Amherst, Hampshire County, situated on the Southerly side of Market Hill Road, bounded and described as follows:

Beginning at a concrete bound set on the Southerly side of Market Hill Road, which bound marks the Northwesterly corner of the premises herein described and the Northeasterly corner of Parcel 3-37A as shown on the plan hereinafter mentioned; thence running S. 79 deg. 00' E. along said Market Hill Road two hundred twenty-three and twenty-seven hundredths (223.27) feet to the beginning of the curve to the right with a length of two hundred thirty-seven and thirty hundredths (237.30) feet, with a radius of three hundred five and fifty-four hundredths (305.54) feet, with a tangent of one hundred twenty-five (125.00) feet and with an interior angle of 44 deg. 30' to the end of the curve; thence running S. 34 deg. 30' E. along Market Hill Road three hundred eighty-four and sixty-two hundredths (384.62) feet to a concrete bound; thence running S. 76 deg. 30' W. along land now or formerly of F.G. Ruder four hundred twenty-four and eighty-four hundredths (424.84) feet to an old iron pin found at a fence; thence running S. 50 deg. 13' E. along said land now or formerly of F. G. Ruder seventy-nine and fourteen hundredths (79.14) feet to an iron pipe in a fence; thence running S. 25 deg. 31' E. along land now or formerly of F.G. Ruder one hundred four and forty-four hundredths (104.44) feet to an iron pipe in a fence; thence running S. 10 deg. 53' E. along land now or formerly of Halpern two hundred ten and seventy-seven hundredths (210.77) feet to an old stone bound; thence running N. 76 deg. 12' W. along land of F.G. ruder four hundred eighty-six and sixty-nine hundredths (486.69) feet to an old stone bound; thence running N. 3 deg. 18' E. along land of F.G. Ruder two hundred ninety-six and ninety-six hundredths (296.96) feet to drill hole in a wall; thence running N. 39 deg. 57' W. along land of F.G. Ruder twenty-five and twenty-three (25.23) feet to an iron pipe set in a fence; thence running N. 12 deg. 47' E. along land of Robert J. Zakaitis and Alice E. Zakaitis five hundred three and thirty-five (503.35) feet to the place of beginning. Containing nine and thirty-six hundredths (9.36) acres.

Conveyed to Elizabeth F. Riley, from Franklin J. Riley, by Quitclaim Deed dated September 18, 1997 and recorded on October 1, 1997 in book 6434 on page 192.

Property Address:  539 Market Hill Road, Amherst, MA 01002
Property ID#: 03D000037

ATTEST: HAMPSHIRE, *Marianne L. Donohue* REGISTER
MARIANNE L. DONOHUE

04 258 2

A TRUE COPY
ATTEST                COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.        *Harry Jekanowski Jr.*
                CLERK MAGISTRATE                    SUPERIOR COURT

---

NovaStar Mortgage, Inc.,              )
        Plaintiff,                    )        CIVIL ACTION NO.
                                      )
v.                                    )
                                      )
Elizabeth F. Riley,                   )
Scott Heineman, and                   )
Kurt F. Johnson, Trustees of          )
the Riley Family Trust                )
and The Dorean Group,                 )
        Defendants.                   )

---

### EX PARTE
### MOTION FOR APPROVAL OF MEMORANDUM OF LIS PENDENS
### (M.G.L. Chapter 184, section 15)

NOW COMES the above-captioned plaintiff and, pursuant to M.G.L. ch. 184, §15, moves this Honorable Court to grant the plaintiff permission to record the filing of a Lis Pendens on the property which is the subject of an action filed herewith.  In support thereof, the plaintiff states as follows:

1.    The plaintiff's action against the defendant constitute claims of a right to title and to real property, to wit, the defendant, Elizabeth F. Riley, granted a mortgage to the plaintiff on or about June 24, 2002, which was recorded in the Hampshire County Registry of Deeds on document number 992219686 in book 6700, page 281.

2.    As consideration for said mortgage, the plaintiff loaned the defendant two hundred eighty four thousand seven hundred fifty dollars ($284,750.00) on or about June 24, 2002.

3.    Subsequently, on or about July 6, 2004, defendant, Elizabeth F. Riley, conveyed a mortgage[1] to

---

[1] Said mortgage is junior to the plaintiff's mortgage, and was recorded in the Hampshire County Registry of Deeds in Book 7889, Page 16 on or about July 6, 2004.

defendants, Scott Heineman and Kurt F. Johnson, Trustees of the Riley Family Trust, for no consideration, by quitclaim deed.

4.    On or about August 17, 2004, defendants, Scott Heineman and Kurt F. Johnson, Trustees of the Riley Family Trust, filed a document titled "Notice of Intent to Correct Title" which purported to extinguish the plaintiff's mortgage.

5.    On or about August 20, 2004, defendants, Scott Heineman and Kurt F. Johnson, Trustees of the Riley Family Trust attempted to unlawfully discharge plaintiff's valid mortgage.

Wherefore, the plaintiff prays that this Court:

A. Grant this motion and endorse the Memorandum of Lis Pendens submitted herewith; and,

B. Order any other relief that the Court deems Just and Equitable.

Respectfully submitted,
NovaStar Mortgage, Inc.
By their Attorneys,

ABILETT & CARUOLO, PC

DATED:  11-12-04

William J. Amann
BBO # 648511
333 North Avenue, 4th Floor
Wakefield, MA 01880
781-246-8995

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, ss                                    SUPERIOR COURT

NovaStar Mortgage, Inc.,           )
        Plaintiff,                 )        CIVIL ACTION NO. 04-258
                                   )
v.                                 )
                                   )
Elizabeth F. Riley,                )
Scott Heineman and                 )
Kurt F. Johnson, Trustees of       )
the Riley Family Trust             )
and The Dorean Group,              )
        Defendants.                )

## AFFIDAVIT OF NOTICE OF ALLOWANCE OF
## MEMORANDUM OF LIS PENDENS

I, ~~William J. Amann~~ BRIAN T. LAMANNA, the attorney for the above named
plaintiff, do hereby certify that on November 18, 2004, I
gave notice to all other parties that the plaintiff's
motion for approval of Memorandum of Lis Pendens has been
allowed on November 18, 2004, by mailing the motion, the
findings and approval by the court, and the within
affidavit, certified mail to all other parties, return
receipt, requested, addressed to:

Elizabeth F. Riley
539 Market Hill Road
Amherst, MA 01002

The Dorean Group
32108 Alvarado Boulevard,#381
Union City, CA, 94587

Scott Heineman and Kurt F. Johnson
Trustees of the Riley Family Trust
32108 Alvarado Boulevard,#381
Union City, CA, 94587

SIGNED UNDER THE PENALTIES OF PERJURY THIS DAY.

DATED: 11-18-04

                                    ~~William J. Amann, Esq.~~
                                    BRIAN T. LAMANNA

ATTEST: HAMPSHIRE, _Marianne L. Donohue_ REGISTER
                    MARIANNE L. DONOHUE

CAND-ECF - Docket Report



ADRMOP, E-Filing

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:04-cv-03724-WHA**

The Frances Kenny Family Trust et al v. World Savings
Bank, FSB et al
Assigned to: Hon. William H. Alsup
Cause: 28:1331 Fed. Question

Date Filed: 09/03/2004
Jury Demand: Plaintiff
Nature of Suit: 370 Fraud or Truth-In-
Lending
Jurisdiction: Federal Question

<u>Plaintiff</u>

**The Frances Kenny Family Trust**                    represented by **Thomas Spielbauer**
The Spielbauer Law Firm
50 Airport Parkway
San Jose, CA 95110
408-451-8499
Fax: 510-475-5531
Email: thomas@spielbauer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Scott Heineman**
*as trustee*                                          represented by **Thomas Spielbauer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Kurt Johnson**
*as trustee, and individual assignees on*             represented by **Thomas Spielbauer**
*behalf of Frances Kenny*                             (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**World Savings Bank, FSB**                           represented by **Walter J.R. Traver**
Musick, Peeler & Garrett LLP
120 Montgomery Street, Suite 2550
San Francisco, CA 94104-4303
415-281-2000
Fax: 415-281-2010
Email: w.traver@mpglaw.com
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**The Directors and Officers of World
Savings Bank FSB**

**Defendant**

**Castle Capital Corporation**                 represented by  **Linda Reyes**
                                                Kimball, Tirey & St. John
                                                5994 W. Las Positas Blvd., Suite 219
                                                Pleasanton, CA 94588
                                                925-469-1690
                                                Email: Linda.Reyes@kts-law.com
                                                *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Ocwen Federal Bank FSB**                      represented by  **John Stephen Siamas, Esq.**
*Defendant in USDC No. 04-04014 EMC*            Reed Smith LLP
                                                P.O. Box 7936
                                                San Francisco, CA 94120-7936
                                                415-543-8700
                                                Fax: 415-391-8269
                                                Email: jsiamas@reedsmith.com
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2004 | 1 | COMPLAINT /issued summons against Castle Capital Corporation, The Directors and Officers of World Savings Bank FSB, World Savings Bank, FSB ( Filing fee $ 150, receipt number 4410032.). Filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (ga, COURT STAFF) (Filed on 9/3/2004) (Entered: 09/08/2004) |
| 09/03/2004 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 12/30/2004. Case Management Conference set for 1/6/2005 10:00 AM.. Signed by Judge Maria-Elena James on 9/3/04. (Attachments: # 1 Standing Order# 2 Consent/Decline Form)(ga, COURT STAFF) (Filed on 9/3/2004) (Entered: 09/08/2004) |
| 09/03/2004 | | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 9/3/2004) (Entered: 09/08/2004) |
| 09/09/2004 | 3 | Declination to Proceed Before a U.S. Magistrate Judge by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (mejlc1, COURT STAFF) (Filed on 9/9/2004) (Entered: 09/10/2004) |
| 09/09/2004 | 5 | SUMMONS Returned Executed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. World Savings Bank, FSB served on 9/7/2004, answer due 9/27/2004. (ga, COURT STAFF) (Filed on 9/9/2004) (Entered: 09/13/2004) |
| 09/09/2004 | 6 | SUMMONS Returned Executed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. The Directors and Officers of World Savings Bank FSB served on 9/7/2004, answer due 9/27/2004. (ga, |

| | | |
|---|---|---|
| | | COURT STAFF) (Filed on 9/9/2004) (Entered: 09/13/2004) |
| 09/09/2004 | 7 | SUMMONS Returned Executed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. World Savings Bank, FSB served on 9/7/2004, answer due 9/27/2004. (ga, COURT STAFF) (Filed on 9/9/2004) (Entered: 09/13/2004) |
| 09/10/2004 | 4 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (bjt, COURT STAFF) (Filed on 9/10/2004) (Entered: 09/10/2004) |
| 09/13/2004 | 8 | ORDER REASSIGNING CASE. Case reassigned to Judge William H. Alsup for all further proceedings. Judge Maria-Elena James no longer assigned to case. Signed by Executive Committee on 9/13/04. (as, COURT STAFF) (Filed on 9/13/2004) (Entered: 09/13/2004) |
| 09/15/2004 | 9 | CLERK'S NOTICE Scheduling Initial Case Management Conference on Reassignment set for 12/2/2004 11:00 AM. Case Management Statement due by 11/18/2004. (dt, COURT STAFF) (Filed on 9/15/2004) Additional attachment(s) added on 9/15/2004 (dt, COURT STAFF). (Entered: 09/15/2004) |
| 09/21/2004 | 10 | AMENDED COMPLAINT , *FIRST,* against all defendants. Filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 9/21/2004) (Entered: 09/21/2004) |
| 09/28/2004 | 11 | MOTION to Dismiss *Mem. of P&As,* filed by World Savings Bank, FSB. Motion Hearing set for 11/4/2004 08:00 AM. (Attachments: # 1 Decl of Knipp; Req. Jud. Ntc.)(Traver, Walter) (Filed on 9/28/2004) (Entered: 09/28/2004) |
| 09/28/2004 | 12 | NOTICE of Related Case. Case Nos. C04-3776JL; C04-3898MMC; C04-3897SC; C04-4013MEJ. (sis, COURT STAFF) (Filed on 9/28/2004) (Entered: 09/29/2004) |
| 10/13/2004 | 13 | First MOTION for Extension of Time to File Answer re 10 Amended Complaint filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 10/13/2004) (Entered: 10/13/2004) |
| 10/15/2004 | 14 | Memorandum in Opposition re 11 MOTION to Dismiss *Mem. of P&As, Declaration of Larry Bates, Exhibit 1 (Money Masters DVD video)* filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 10/15/2004) (Entered: 10/15/2004) |
| 10/18/2004 | 15 | MOTION for Extension of Time to File Answer re 10 Amended Complaint *Stipulation for Extension of Time* filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 10/18/2004) (Entered: 10/18/2004) |
| 10/19/2004 | 16 | ERRATA re 14 *Bates Affidavit pages properly sequenced* by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 10/19/2004) (Entered: 10/19/2004) |
| 10/20/2004 | 17 | Reply to Opposition *in Support of Motion to Dismiss* filed by World |

| | | Savings Bank, FSB. (Traver, Walter) (Filed on 10/20/2004) (Entered: 10/20/2004) |
|---|---|---|
| 10/25/2004 | 18 | MEMORANDUM in Support re 11 *Supplemental Authority* filed by World Savings Bank, FSB. (Related document(s)11) (Traver, Walter) (Filed on 10/25/2004) (Entered: 10/25/2004) |
| 10/29/2004 | 19 | Reply Memorandum *Opposition to Defendants' Memorandum* filed by Scott Heineman, Kurt Johnson, The Frances Kenny Family Trust. (Spielbauer, Thomas) (Filed on 10/29/2004) (Entered: 10/29/2004) |
| 10/29/2004 | 20 | MOTION to Dismiss *and/or Transfer for Improper Venue* filed by Castle Capital Corporation. Motion Hearing set for 12/9/2004 10:00 AM. (Attachments: # 1 Supplement Memorandum of Points and Authorities# 2 Proposed Order # 3 Affidavit Proof of Service)(Reyes, Linda) (Filed on 10/29/2004) (Entered: 10/29/2004) |
| 11/01/2004 | 21 | ORDER RELATING CASES, C04-3724WHA, C04-3776JL, C04-3897SC, C04-3898MMC, C04-4013MEJ re [12] Notice of Related Case filed by World Savings Bank, FSB. Signed by Judge William Alsup on 11/1/04. (dt, COURT STAFF) (Filed on 11/1/2004) (Entered: 11/01/2004) |
| 11/04/2004 | 22 | Minute Entry: Motion Hearing held on 11/4/2004 before William Alsup (Date Filed: 11/4/2004) re 11 MOTION to Dismiss *Mem. of P&As,* filed by World Savings Bank, FSB. Motion taken under submission. (Court Reporter Sahar McVickar.) (dt, COURT STAFF) (Date Filed: 11/4/2004) (Entered: 11/04/2004) |
| 11/04/2004 | 23 | AMENDED Minute Entry: Motion Hearing held on 11/4/2004 before William Alsup (Date Filed: 11/4/2004) re 11 MOTION to Dismiss *Mem of P&As,* filed by World Savings Bank, FSB. Motion taken under submission. (Court Reporter Sahar McVickar.) (dt, COURT STAFF) (Date Filed: 11/4/2004) (Entered: 11/04/2004) |
| 11/08/2004 | 24 | FILED IN ERROR. PLEASE SEE DOCKET #28 ORDER DISMISSING PLAINTIFFS' ACTION WITH PREJUDICE by Judge William Alsup [granting 11 Motion to Dismiss]. (whasec, COURT STAFF) (Filed on 11/8/2004) Modified on 11/9/2004 (whasec, COURT STAFF). (Entered: 11/08/2004) |
| 11/08/2004 | 25 | ORDER TO SHOW CAUSE: Order to Show Cause Hearing set for 11/30/2004 at 03:30 PM. Show Cause Response due by 11/19/2004. Any response by defendant due by November 24, 2004. Signed by Judge William Alsup on 11/8/2004. (whasec, COURT STAFF) (Filed on 11/8/2004) (Entered: 11/08/2004) |
| 11/08/2004 | 26 | TRANSCRIPT of Proceedings held on 11/04/04 before Judge William Alsup. Court Reporter: Sahar McVickar. (sis, COURT STAFF) (Filed on 11/8/2004) (Entered: 11/09/2004) |
| 11/09/2004 | 27 | NOTICE of Related Case (Siamas, John) (Filed on 11/9/2004) (Entered: 11/09/2004) |

| 11/09/2004 | 28 | CORRECTION OF DOCKET #24. (Entered: 11/09/2004) |
|---|---|---|
| 11/09/2004 | 29 | Amended MOTION to Dismiss filed by Castle Capital Corporation. Motion Hearing set for 12/9/2004 08:00 AM. (Attachments: # 1 Affidavit Proof of Service)(Reyes, Linda) (Filed on 11/9/2004) (Entered: 11/09/2004) |
| 11/12/2004 | 30 | First MOTION for Sanctions *Pursuant to FRCP Rule 11; Declaration of Barry D. Hovis in Support of Rule 11 Motion* filed by World Savings Bank, FSB. Motion Hearing set for 11/30/2004 03:00 PM. (Traver, Walter) (Filed on 11/12/2004) (Entered: 11/12/2004) |
| 11/15/2004 | 31 | ORDER RELATING CASES, C04-3724 and C04-4286MMC. Signed by Judge William Alsup on 11/10/04. (dt, COURT STAFF) (Filed on 11/15/2004) Modified on 11/15/2004 (dt, COURT STAFF). (Entered: 11/15/2004) |
| 11/15/2004 | 32 | ORDER RELATING CASES, C04-3724, C04-3776, C04-3897, C04-3898, C04-4013, and C04-4102CRB. Signed by Judge William Alsup on 11/10/04. (dt, COURT STAFF) (Filed on 11/15/2004) (Entered: 11/15/2004) |
| 11/19/2004 | 33 | Memorandum in Opposition *To Sanctions* filed byThe Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/19/2004) (Entered: 11/19/2004) |
| 11/19/2004 | 34 | DECLARATION of Thomas Spielbauer *In Opposition to Sanctions* filed byThe Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/19/2004) (Entered: 11/19/2004) |
| 11/19/2004 | 35 | NOTICE by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson re 33 Memorandum in Opposition, 34 Declaration in Opposition *Proof of Service* (Spielbauer, Thomas) (Filed on 11/19/2004) (Entered: 11/19/2004) |
| 11/21/2004 | 36 | MOTION to Withdraw as Attorney *Thomas Spielbauer to Withdraw as Counsel for Plaintiffs* filed by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/21/2004) (Entered: 11/21/2004) |
| 11/21/2004 | 37 | MOTION to Withdraw as Attorney *by Thomas Spielbauer as Counsel for Plaintiffs, Proposed Order* filed by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/21/2004) (Entered: 11/21/2004) |
| 11/21/2004 | 38 | MOTION to Shorten Time *for Motion to Withdraw as Counsel for Plaintiffs by Thomas Spielbauer* filed by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/21/2004) (Entered: 11/21/2004) |
| 11/21/2004 | 39 | Proposed Order re 38 MOTION to Shorten Time *for Motion to Withdraw as Counsel for Plaintiffs by Thomas Spielbauer* by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/21/2004) (Entered: 11/21/2004) |

| | | |
|---|---|---|
| 11/21/2004 | 40 | CERTIFICATE OF SERVICE by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson re 36 MOTION to Withdraw as Attorney *Thomas Spielbauer to Withdraw as Counsel for Plaintiffs*, 37 MOTION to Withdraw as Attorney *by Thomas Spielbauer as Counsel for Plaintiffs, Proposed Order*, 38 MOTION to Shorten Time *for Motion to Withdraw as Counsel for Plaintiffs by Thomas Spielbauer*, 39 Proposed Order *by Thomas Spielbauer* (Spielbauer, Thomas) (Filed on 11/21/2004) (Entered: 11/21/2004) |
| 11/22/2004 | 41 | ORDER VACATING AS MOOT RELATED CASE ORDER. Signed by Judge William Alsup on 2/22/2004. (whasec, COURT STAFF) (Filed on 11/22/2004) (Entered: 11/22/2004) |
| 11/23/2004 | 42 | ORDER DENYING MOTION TO SHORTEN TIME by Judge William Alsup [denying 38 Motion to Shorten Time]. (whasec, COURT STAFF) (Filed on 11/23/2004) (Entered: 11/23/2004) |
| 11/24/2004 | 43 | Reply to Opposition *World Savings Bank FSB's Reply to Plaintiff's Opposition to Motion for Sanctions* filed byWorld Savings Bank, FSB. (Traver, Walter) (Filed on 11/24/2004) (Entered: 11/24/2004) |
| 11/24/2004 | 44 | Renotice motion hearing re 36 MOTION to Withdraw as Attorney *Thomas Spielbauer to Withdraw as Counsel for Plaintiffs* filed by *Thomas Spielbauer* filed byThe Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. Motion Hearing set for 12/9/2004 08:00 AM. (Spielbauer, Thomas) (Filed on 11/24/2004) (Entered: 11/24/2004) |
| 11/24/2004 | 45 | CLERK'S NOTICE Continuing Defendant Castle Capital's Motion to Dismiss and/or Transfer Hearing and Initial Case Management Conference set for 12/23/2004 08:00 AM. Joint case management statement due by 12/9/04. (dt, COURT STAFF) (Filed on 11/24/2004) (Entered: 11/24/2004) |
| 11/24/2004 | 46 | ORDER RELATING CASES. Signed by Judge William Alsup on 11/24/04. (dt, COURT STAFF) (Filed on 11/24/2004) (Entered: 11/24/2004) |
| 11/28/2004 | 47 | Memorandum in Opposition re 30 First MOTION for Sanctions *Pursuant to FRCP Rule 11; Declaration of Barry D. Hovis in Support of Rule 11 Motion* filed byThe Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Spielbauer, Thomas) (Filed on 11/28/2004) (Entered: 11/28/2004) |
| 12/01/2004 | 48 | ORDER RESOLVING ORDER TO SHOW CASUE [re 25 Order to Show Cause]. Signed by Judge William Alsup on 11/30/2004. (whasec, COURT STAFF) (Filed on 12/1/2004) (Entered: 12/01/2004) |
| 12/02/2004 | 49 | Minute Entry: Motion Hearing held on 11/30/2004 before William Alsup (Date Filed: 12/2/2004) re 30 First MOTION for Sanctions *Pursuant to FRCP Rule 11; Declaration of Barry D. Hovis in Support of Rule 11 Motion* filed by World Savings Bank, FSB,, Show Cause Hearing held on 12/2/2004 before William Alsup (Date Filed: 12/2/2004). Plaintiff is moving to dismiss all of the related cases. Court ordered plaintiff's |

| | | counsel to pay $10,000 in sanctions to the defendant and defense counsel. (Court Reporter Joan Columbini.) (dt, COURT STAFF) (Date Filed: 12/2/2004) Modified on 12/2/2004 (dt, COURT STAFF). (Entered: 12/02/2004) |
|---|---|---|
| 12/07/2004 | 50 | CLERK'S NOTICE: Motion Hearing rescheduled to 12/9/2004 at 02:00 PM. (rbe, COURT STAFF) (Filed on 12/7/2004) (Entered: 12/07/2004) |
| 12/08/2004 | 53 | TRANSCRIPT of Proceedings held on 11/30/04. Court Reporter: Joan Columbini. (rcs, COURT STAFF) (Filed on 12/8/2004) (Entered: 12/09/2004) |
| 12/09/2004 | 51 | NOTICE of Voluntary Dismissal *of any Remaining Defendants* by The Frances Kenny Family Trust, Scott Heineman, Kurt Johnson (Spielbauer, Thomas) (Filed on 12/9/2004) (Entered: 12/09/2004) |
| 12/09/2004 | 52 | ORDER CONTINUING HEARING AND REQUESTING FURTHER BRIEFING. Signed by Judge William Alsup on 12/9/2004. (whasec, COURT STAFF) (Filed on 12/9/2004) (Entered: 12/09/2004) |
| 12/13/2004 | 54 | ORDER SCHEDULING HEARING ON MOTION TO WITHDRAW. Signed by Judge William Alsup on 12/13/2004. (whasec, COURT STAFF) (Filed on 12/13/2004) (Entered: 12/13/2004) |
| 12/13/2004 | 55 | MEMORANDUM in Support re 52 Order *Requesting Further Briefing* filed byThe Frances Kenny Family Trust, Scott Heineman, Kurt Johnson. (Related document(s)52) (Spielbauer, Thomas) (Filed on 12/13/2004) (Entered: 12/13/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/13/2004 11:55:55 | | |
| PACER Login: | gm0080 | Client Code: |
| Description: | Docket Report | Search Criteria: | 3:04-cv-03724-WHA |
| Billable Pages: | 4 | Cost: | 0.28 |

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

Deutsche Bank National Trust Co.

**(b)** County of Residence of First Listed Plaintiff _California_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John Doonan, Esq.   Beverly MA 01915
Doonan Graves + Longoria   978-921-2670
100 Cummings Cth. Suite 213c

## DEFENDANTS

D. Scott Heineman, Trustee
Kurt F. Johnson, Trustee
Julie R. Bermont
David F. Farkas

County of Residence of First Listed Defendant _California_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☑ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☑ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☑ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S. Code Title 18 Chapter 96

Brief description of cause:
Mortgage Fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $200,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   None

JUDGE

DOCKET NUMBER

DATE   3/14/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) _Deutsche Bank v Heineman_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

   [X] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _None_

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]    NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [X]    NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]      Central Division [ ]      Western Division [X]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

   YES [ ]    NO [X]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _John A. Doonan, Esq._
ADDRESS _100 Cummings Ctr. Suite 213C Beverly MA 01915_
TELEPHONE NO. _978-921-2670 x12_

(CategoryForm.wpd - 2/15/05)